IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WALTER POPE, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CASE NO. CV 01-B-1266-S |
| | } | |
| PARATRANSIT INSURANCE | } | |
| COMPANY, A Mutual Risk Retention | } | |
| Group; SEDGWICK OF | } | |
| TENNESSEE, INC.; MARSH USA, | } | |
| INC. | } | **ENTERED** |
| | } | |
| Defendants. | } | MAR 3 1 2004 |

**MEMORANDUM OPINION**

Currently before the court is a Motion for Summary Judgment filed by defendant Paratransit Insurance Company ("Paratransit"), (doc. 38), and a joint Motion for Summary Judgment filed by defendants Marsh USA, Inc. and Sedgwick of Tennessee, Inc. (collectively "Marsh"), (doc. 36). Walter Pope, ("plaintiff" or "Pope"), asserts claims of fraud and suppression against defendants. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motions for Summary Judgment are due to be granted.

**I.   FACTUAL SUMMARY**

On October 6, 1998, Pope filed suit in state court against Yellow Cab Co. for injuries he sustained on March 2, 1997, in an automobile accident; plaintiff was a passenger in a vehicle licensed by Yellow Cab and driven by Mr. Gursurjit Ghotar at the time of the accident.[1] (Doc.

---

[1]Barbara Lewis was also injured in this accident. (Doc. 43, Ex. C ¶ 2; Doc. 37, Tab 1, Ex. D.)



37, Tab 1, Ex. B; Doc. 1 ¶¶ 12-13.) Yellow Cab retained an attorney, Izas (Butch) Bahakel ("Bahakel"), to represent it in the state court action. (Doc. 37, Tab 1, Ex. B.) The trial was scheduled to begin in January 2001. (Doc. 43, Ex. C ¶ 5.)

At the time of the accident, Yellow Cab was insured by a policy of insurance issued by Paratransit.[2] (Doc. 37, Tab 1, Ex. A.) The policy covered Yellow Cab's liability for bodily injuries and property damage imposed by law. (Doc. 37, Tab 1, Ex. A.) The policy limits were $50,000 per person for bodily injury, $100,000 per accident (aggregate) for bodily injury, and $20,000 per accident for property damage in excess of the "Retained Limit" of $50,000. (Doc. 37, Tab 1, Ex. A at 00575, 00583.)

The policy did not provide a defense for lawsuits filed against Yellow Cab and its employees unless Yellow Cab first tendered to Paratransit the "Retained Limit" amount of $50,000; at that time, Paratransit had the option to choose to employ counsel to represent the insured. (Doc. 37, Tab 1, Ex. A at 00579, 00582.) If Yellow Cab retained counsel, Paratransit did not direct, control or reserve the right to control the course of litigation or the counsel selected by Yellow Cab to defend any lawsuit filed against it. (Doc. 37, Tab 1, Ex. A; Tab 3 at 31, 47-48.) Under the policy, Paratransit was responsible for paying damages in excess of $50,000, but lower than $100,000, that were owed collectively by Yellow Cab to multiple plaintiffs and arising from a single accident.

Yellow Cab was required to have insurance coverage pursuant to Birmingham City Code § 12-16-61. (Doc. 1 ¶¶ 9-10.) This provision requires all taxicabs licensed to operate in the City

---

[2]The policy, Policy No.: PG 1096 96, was entitled, "Excess Automobile Liability Insurance Coverage." (Doc. 37, Tab 1, Ex. A.)

2

of Birmingham to carry a personal injury liability policy that provides coverage of $50,000 per person and $100,000 per accident for personal injury liability, and $10,000 for property damage liability, or $300,000 for combined single limit liability. (Doc. 1 ¶ 9.) Yellow Cab's policy provided such minimum insurance. However, with a Retained Limit of $50,000, Yellow Cab would be solely responsible for paying for bodily injury for the first person injured. The record contains evidence that Yellow Cab realized that for an accident involving a single person with bodily injuries no insurance money would be exposed. (Pl.'s Br. at 24; Thompson dep., Ex. A at 35).

Sedgewick of Tennessee and Marsh USA have each, at different times, handled claims for Paratransit. (Doc. 37, Tab 1, Ex. D; Tab 3 at 7-8, 10.) Daniel Thompson was employed by Sedgewick and then Marsh USA, as Assistant to the Vice President of Marsh. (Doc. 37, Tab 3 at 7-8, 10.) Thompson monitored the Pope lawsuit for Marsh on behalf of Paratransit. (Doc. 37, Tab 3 at 10; Tab 1.)

In October 1998, Don Smith of Yellow Cab, notified Paratransit, via Thompson, of a suit filed by Pope, arising out of the March 1997 accident. (Doc. 37, Tab 1, Ex. B.) At that time, Yellow Cab informed Paratransit it had retained Bahakel to defend the suit filed by Pope. (Doc. 37, Tab 1, Ex. B.) Bahakel understood he represented Yellow Cab, and not Paratransit; he stated, in a letter to Thompson, "As you know, I do not and have not ever represented [Paratransit] and must follow the instructions from my clients Yellow Cab Company of Birmingham, Inc. and/or Huffman Cabs, Inc." (Doc. 37, Tab 1, Ex. C.) Bahakel also had a certified copy of the insurance contract. (Doc. 38, Ex. 2 at 142.)

3

In a January 10, 2001, letter to Bahakel, Paratransit expressed its willingness to tender the limits of the policy to the insured "per the terms of the insurance contract." (Doc. 37, Tab 1, Ex. D.) In the same letter, Thompson reminded Bahakel and Yellow Cab of the Paratransit policy limits and restrictions: "Please note the policy limit is $50,000 per individual with an aggregate of $100,000 per accident less the self insured retention of $50,000." (Doc. 37, Tab 1, Ex. D.) Thompson did not imply to Bahakel at any time that Paratransit would pay up to $100,000 for a claim made by one person. (Doc. 38, Ex. 2 at 164.) At no time did Paratransit, its employees, or representatives participate in the settlement negotiations of the lawsuit filed by Pope. (Doc. 37, Tab 1, Ex. E; Doc. 38, Ex. 2 at 51, 147-48, 152.) In addition, the terms of the insurance contract stated, "In the event the Claimant(s) settlement demand is in excess of the "Retained Limit," . . . [then Paratransit's] liability shall be limited to that amount in excess of the "Retained Limit" and shall not drop-down to satisfy or replace any amount that is wholly or partially within [Yellow Cab's] "Retained Limit." (Doc. 37, Tab 1, Ex. A at 00582.) Despite Thompson's representations to Bahakel, during settlement negotiations Bahakel allegedly misled Pope's counsel, Gary Cody, to believe the "limits" on the policy were $100,000, including the contribution from Yellow Cab. (Doc. 43, Ex. C ¶ 4.) As a result, Pope and Cody relied on Bahakel's representations when agreeing on the settlement amount. (Doc. 43, Ex. C ¶¶ 6, 7.)

On January 20, 2001, Bahakel notified Thompson that he had settled Pope's claim for $100,000. (Doc. 37, Tab 1, Ex. E.) Bahakel requested Paratransit issue a check for $50,000 to the Circuit Clerk of Jefferson County. (Doc. 37, Tab 1, Ex. E.) Thompson then notified Bahakel that the limits of the policy was $50,000 per individual, that Yellow Cab's Retained Limit was

4

$50,000 and therefore, Paratransit was not responsible for any portion of the settlement. (Doc. 38, Ex. 2 at 134-140, 163-64.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. FRAUDULENT MISREPRESENTATIONS

In Alabama, the elements of a claim for fraudulent misrepresentation are: (1) defendant makes a false representation, (2) the representation concerns a material existing fact, (3) plaintiff reasonably relied on the representation, and (4) plaintiff's reliance on the representation proximately caused damages to the plaintiff. *Auto-Owners Ins. Co. v. Abston*, 822 So. 2d 1187, 1196 (Ala. 2001); citing *Smith v. Smith* 820 So. 2d 64 (Ala. 2001). Therefore, in this case, Pope must establish a genuine issue of material fact that (1) defendants made a false representation concerning the amount of coverage under the policy, (2) the amount of coverage was a material existing fact, (3) Pope reasonably relied on defendants' representations, and (4) defendants' representations proximately caused plaintiff's damages.

The parties do not dispute that during settlement negotiations with Pope's counsel Bahakel represented the limits of insurance, including the contribution from Yellow Cab, available for Pope's claim equaled $100,000 (Doc. 43, Ex. C ¶ 4.), that Bahakel's representation was wrong, and further, that Pope relied on this representation when he agreed to enter into a consent judgment against Yellow Cab for $100,000.[3] (Doc. 43, Ex. C ¶¶ 6, 7.) Plaintiff

---

[3]Defendants contend plaintiff's reliance on Bahakel's representations about the limits of coverage was not reasonable. Plaintiff argues that given the ambiguities in the policy, Plaintiff's reliance upon the representations made by Bahakel as to the policy limits was reasonable. There is no need to pursue this argument. Even if the court were to agree with plaintiff, this fact would not affect the court's ruling below.

Although it is clear now that the policy did not give rise to the obligation that Paratransit pay Pope any monies, the policy was not a model of clarity, and the coverage was not patently clear. Therefore, viewing the evidence in the light most favorable to the plaintiff, the court finds plaintiff's reliance on Bahakel's representations was reasonable under the circumstances. *See Foremost Ins. Co. v. Parham, et. al.*, 693 So. 2d 409, 419, 433 (Ala. 1997). An individual is not capable of discovering a fraud or negligent misrepresentation by reading and understanding the terms of a contract if that contract is ambiguous, *i.e.*, capable of more than one interpretation, and thus hard to understand. *See Ex parte Seabol*, 782 So. 2d 212, 216-17 (Ala. 2000) (finding

additionally maintains that by agreeing to entry of the consent judgment, he suffered damages when he surrendered his right to trial by jury. Assuming these facts provide a genuine issue of material fact as to elements two, three and four of plaintiff's fraudulent misrepresentation claim, plaintiff still must present sufficient evidence as to the first element; that is, defendants or their agent, made the false representations.

### A.   BAHAKEL DID NOT HAVE ACTUAL AUTHORITY TO ACT ON BEHALF OF DEFENDANTS

Neither Thompson nor any other individual affiliated with defendants participated in the settlement negotiations in the underlying state court action. In fact, no one affiliated with defendants ever directly contacted plaintiff or plaintiff's counsel regarding settlement negotiations. However, plaintiff contends Bahakel was acting as Paratransit's agent during settlement negotiations, and therefore, Paratransit should be held vicariously liable for Bahakel's false representations to plaintiff during settlement negotiations.

In this case, to determine whether Bahakel was defendants' actual agent, the court must determine if defendants had the requisite degree of control. *Thrash v. Credit Acceptance Corp.*, 821 So. 2d 968 (Ala. 2001) ("The test to be applied in determining whether there existed an agency relationship based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent's performance."); *Carlton v. Ala. Dairy Queen, Inc.*, 529 So. 2d 921, 923 (1988) ("The test to be applied in determining the existence of agency under the doctrine of respondeat superior is whether the alleged principal has control over the manner of the alleged agent's performance."). There must be a retention of control over the manner in

---

that where underlying documents are not easily understood, plaintiff's reliance on oral representation concerning documents is reasonable).

which the work is done before an agency relationship is created. *Alabama Power Co. v. Beam*, 472 So. 2d 619, 625 (Ala. 1985).

The Alabama Supreme Court stated the controlling principles of agency law in *Malmberg v. Am. Honda Motor Co., Inc.*, 644 So. 2d 888 (Ala. 1994):

> Agency is generally a question of fact to be determined by the trier of fact. When a defendant's liability is to be based on agency, agency may not be presumed; rather, when on a motion for summary judgment a defendant has made a prima facie showing that there was no agency relationship, the party asserting agency has the burden of presenting substantial evidence of the alleged agency. The test to be applied in determining whether there existed an agency relationship based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent's performance. Control must be proven; and proof of control requires more than proof of a mere right to determine if the person claimed to be an agent is conforming to the requirements of a contract.

*Malmberg*, 644 So. 2d at 890 (citations omitted).

There is no evidence in the record on which a reasonable jury could find that Bahakel was the actual agent of Paratransit. Yellow Cab, not Paratransit, hired and compensated Bahakel to defend it and its employee, Ghotar, in Pope's lawsuit. Bahakel did not represent Paratransit during settlement negotiations, and Paratransit neither controlled nor reserved the right to control the defense of the state court litigation or any aspect of Bahakel's representation of Yellow Cab and Ghotar.[4] In fact, in a letter to Thompson, Bahakel stated, "[a]s you know, I do not and have

---

[4]Under the policy, Bahakel, as the insured's lawyer, was required to get the express approval of Paratransit to settle an amount in excess of the insured's "Retained Limit," which in this case was $50,000. The letter from Thompson to Bahakel effectively establishes Paratransit's approval to settle the Pope/Lewis litigation in an amount in excess of $50,000. In the letter, Thompson states that after review he believes Pope's injuries are substantial, and then advises Bahakel that Paratransit is willing to tender the policy limits to him, "*per the terms of the insurance contract,*" for use in resolving the Pope/Lewis lawsuit.

not ever represented [Paratransit], and must follow the instructions from my clients [Yellow Cab]. . ." (Doc. 37, Tab 1, Ex. C.)

Moreover, during settlement negotiations Paratransit did not retain any level or degree of control over what assertions or comments Bahakel made. Bahakel spoke only on behalf of his client, Yellow Cab. Although the limits of Yellow Cab's insurance coverage turned out to be an integral part of the settlement negotiations,[5] Bahakel was not authorized, and did not have the power, to extend Paratransit's liability under the insurance policy to pay an amount not covered under the terms of the insurance policy. Therefore, the court finds that defendants did not exercise, or have authority to exercise, any control over Bahakel.

The only evidence of defendants' control over Bahakel that plaintiff offers is a letter Thompson wrote to Bahakel on January 10, 2001. In this letter, Thompson advised Bahakel that Paratransit was *prepared* to "tender the limits of the policy, per the terms of the policy" to Yellow Cab "to use as [Yellow Cab] sees fit in resolving" the claims of Pope and Lewis. (Doc. 37, Tab 1, Ex. D.) This letter is not sufficient to prove that defendants authorized Bahakel to change the terms of the policy. Rather, this letter states merely that Yellow Cab is authorized to use the funds available under the insurance policy "as [Yellow Cab] sees fit;" (*id.*) it does not seek to control how Bahakel used the policy funds. Apparently Bahakel [Yellow Cab's agent] simply misunderstood the terms of the insurance policy, and it is for this reason he offered Pope $100,000, $50,000 more than the policy limits for an individual's bodily injury, to settle his

---

[5]Soon after receiving a letter from Thompson that generally restated the policy limits, Bahakel secured a settlement agreement of Pope's and Lewis's claims whereby Pope was to receive $100,000 and Lewis $3,500.

claims. He did not have defendants' actual authorization to offer plaintiff more than the policy limits.

### B. APPARENT AGENCY

Plaintiff claims, in the alternative, that defendants are liable for the misrepresentations of Bahakel because Bahakel had apparent authority as defendants' agent. (Compl. ¶ 17). Pursuant to Alabama law, "The apparent authority of an agent is to be determined by the acts of the principal, and not by the acts of the agent." *Kingvision Pay-Per-View, Ltd. v. Ayers*, 1012384, 2003 WL 22753170, *4 (Ala. Nov. 21, 2003)(internal quotations and citations omitted) Apparent authority "is authority that 'the principal has held out the agent as possessing, or which he has permitted the agent to represent that he possesses." *Kennedy v. Western Sizzlin Corp.*, 857 So.2d 71, 77 (Ala. 2003)(quoting *Union Oil Co. v. Crane*, 258 So. 2d 882, 885 (1972))(internal quotations and other citations omitted). A plaintiff alleging liability based on the apparent authority of an agent must show that the alleged principal did something "to create an appearance of authority in [the apparent agent]. Bare assertions are not evidence, much less substantial evidence." *Id.* at 78 (citing *Ex parte Awtrey Realty Co.*, 827 So. 2d 104, 109 (Ala. 2001).

At no time did any defendant represent to plaintiff that Bahakel was its agent. Also, plaintiff cannot rely on the correspondence between Thompson and Bahakel to establish apparent authority because there is no evidence to show Pope was aware of or ever saw such correspondence at any time before or during settlement negotiations. Therefore, it could not have relied on Bahakel's apparent authority during the negotiations.

Based on the evidence before the court, Bahakel, the lawyer representing Yellow Cab in settlement negotiations with Pope, did not act as the actual or apparent agent for, or on behalf of defendants.

### C. RATIFICATION

Plaintiff contends that defendants ratified Bahakel's representation of the policy limits by retaining a benefit received from the settlement of plaintiff's case. "A ratification occurs when a principal retains the benefits resulting from his agent's unauthorized acts with knowledge of the material facts surrounding the transaction." *CIT Financial Services, Inc. v. Bowler*, 537 So.2d 4, 5 (Ala. 1988). "[R]atification can arise only when . . . there is the relationship of principal and agent, either actual or adopted. Ratification . . . is a doctrine of agency, and, where there is no agency and no attempt to act as agent, there is nothing to which the doctrine can apply." *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1319 (M.D. Ala. 2000)(quoting *Exchange Security Bank v. King*, 301 So. 2d 193, 196 (Ala. Civ. App. 1974))(internal quotations omitted).

For the reasons set forth above, the court finds that Bahakel is not defendants' agent. Therefore, plaintiff cannot prove that defendants' "ratified" Bahakel's actions.

### IV. DEFENDANTS HAD NO DUTY TO DISCLOSE INFORMATION TO PLAINTIFF AND, THEREFORE, DID NOT FRAUDULENTLY SUPPRESS ANY MATERIAL INFORMATION.

Plaintiff contends that defendants suppressed the fact that Yellow Cab's policy limit for plaintiff's claim was $50,000 and not $100,000. Alabama law codifies the tort of fraudulent suppression as follows: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential

relations of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102 (1975).

The elements of fraudulent suppression are: (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from action; and (5) that the plaintiff suffered actual damage as a proximate result of acting or of not acting. *Allstate Ins. Co. v. Ware*, 824 So. 2d 739, 744 (Ala. 2002); *Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 n.10 (Ala. 1997); *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So. 2d 1288, 1293 (Ala. 1993); *see also* Ala. Code § 6-5-102 (1975). Whether or not defendants had a duty to disclose the limits of Yellow Cab's policy to plaintiff is a question of law for the court to decide. *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 840 (Ala. 1998). The concept of duty "requires a relationship between two or more parties, a relationship that can be shown only through a history of contacts, conversations, and circumstances." *Id.*

It is plaintiff's burden to show such facts from which defendants' duty to speak arises, such as a transaction that is not at arms length or that the relationship between plaintiff and defendants is such that defendants had a duty to disclose. Defendants were under no duty to disclose to plaintiff the policy limits because there was no confidential relationship between plaintiff and defendants; plaintiff and defendants had no history of contacts or conversations. Moreover, nothing in the circumstances indicated that the relationship between plaintiff and defendant Paratransit, as Yellow Cab's insurer, was anything more than an adversarial relationship, with no confidences exchanged.

In addition, an obligation to disclose does not arise when the parties are knowledgeable and capable of handling their own affairs. *Trio Broadcasters, Inc. v. Ward*, 495 So. 2d 621, 623 (Ala. 1986). Plaintiff's attorney in the state court matter testified that he received a copy of the policy prior to settlement negotiations. Defendants did not have any reason to suspect that plaintiff's counsel was not knowledgeable and capable such that a duty to disclose the policy limits arose.

Therefore, the court finds that defendants did not have a duty to disclose to plaintiff the terms of the insurance policy. As noted above, Pope's attorney had a copy of the policy. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's fraudulent suppression claim.

## V. CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant Paratransit's Motion for Summary Judgment is due to be granted, and defendants Marsh and Sedgwick's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 30th day of March, 2004.

*[signature: Sharon Lovelace Blackburn]*
**SHARON LOVELACE BLACKBURN**
United States District Judge